```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                       CHARLESTON
```

**JESSE T. SMITH,**

    **Plaintiff,**

**v.**                                            **CASE NO. 2:09-cv-00247**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

## **M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Jesse Thomas Smith (hereinafter referred to as "Claimant"), protectively filed applications for SSI and DIB on March 10, 2005, alleging disability as of September 3, 2004, due to a foot injury, emphysema, degenerative disc disease, depression and bipolar disorder. (Tr. at 118-20, 123, 593-95.) The claims were denied initially and upon reconsideration. (Tr. at 71-73, 82-86, 579-81, 587-91.) On February 10, 2006, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 68.) The hearing was held on March 19, 2007, before the Honorable Ronald

L. Chapman. (Tr. at 596-635.) The ALJ conducted a supplemental hearing on August 13, 2007. (Tr. at 636-58.) By decision dated September 27, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-34.) The ALJ's decision became the final decision of the Commissioner on March 6, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 6-9.) On March 19, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2007). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is

not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant

satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 17.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of history of right lumbar radiculopathy, status post L4-5 laminectomy on the right; chronic lumbosacral strain, postlaminectomy syndrome, history of right foot injury with first and second toe traumatic amputations with surgical closure, obesity and bipolar disorder. (Tr. at 18.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 21.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 23.)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 32.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as bakery worker on a conveyor line and surveillance system monitor, which exist in significant numbers in the national economy. (Tr. at 33.)  On this basis, benefits were denied.  (Tr. at 34.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular

> conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was thirty-four years old at the time of the first administrative hearing. (Tr. at 601.) Claimant graduated from high school. (Tr. at 601.) In the past, Claimant worked as a correctional officer at a federal correctional institution, as a home health care provider, as a security guard, on an assembly line and as an office manager. (Tr. at 603-04, 606-08.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will briefly summarize the medical

5

evidence related to Claimant's mental impairments below.

The record includes treatment notes from FMRS Health Systems, Inc. dated February 28, 2005, through October 21, 2005. (Tr. at 423-35.) On February 28, 2005, F. Joseph Whelan, M.D. diagnosed bipolar disorder without psychotic features, seasonal on Axis I and made no Axis II diagnosis. Dr. Whelan rated Claimant's GAF at 45 and prescribed Lamictal and Zoloft. (Tr. at 435, 433.) On March 21, 2005, Claimant reported he was "less depressed, but still has trouble sleeping and at first the medicine seemed to do better." (Tr. at 433.) On April 4, 2005, Dr. Whelan noted that Claimant cannot take Trileptal, and therefore, stopped taking it. Claimant reported panic attacks. (Tr. at 432.) On April 18, 2005, Dr. Whelan added Eskalith CR and continued Claimant on Zoloft and Lamictal. (Tr. at 431.) On June 6, 2005, Claimant reported a reaction to one of his medications, but that he was doing well on Zoloft. (Tr. at 430.) On October 21, 2005, Claimant reported that he had "one outburst and he also quit taking Neurontin and his Daypro." (Tr. at 429.) Dr. Whelan suggested that Claimant resume taking this medication. Claimant was doing well, and Dr. Whelan rate his GAF at 72. (Tr. at 429.)

On June 15, 2005, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairment (bipolar disorder) was not severe. (Tr. at 290-302.)

On January 16, 2006, a State agency medical source completed

6

a Psychiatric Review Technique form and opined that Claimant's mental impairment (bipolar disorder) was not severe. (Tr. at 445-57.)

The record includes additional treatment notes from FMRS Health Systems, Inc. dated March 15, 2006, through February 20, 2007. (Tr. at 521-30.) On March 15, 2006, Emily Walden, PA-C noted Claimant's diagnosis of bipolar disorder and his current medications, which included Buspar, Zoloft and Eskalith. Claimant reported that his depression was improving. Claimant reported Buspar helped at first with his anxiety, but was not helping anymore. (Tr. at 530.) On May 6, 2006, Claimant reported to the crisis stabilization unit with mood swings with recent anger and anxiety. Safiullah Syed, M.D. diagnosed bipolar affective disorder, not otherwise specified and anxiety disorder, not otherwise specified on Axis I and made no Axis II diagnosis. He rated Claimant's GAF at 35. (Tr. at 526.) He prescribed Lithium and Trazodone. Claimant was to attend group and individual counseling sessions and once stable, was to be discharged home. It is unclear if or for how long Claimant remained hospitalized. (Tr. at 527.) On December 20, 2006, a staff member completed a Client Termination Sheet indicating that Claimant had a GAF of 40 at discharge and that the reason for termination was unknown, though the sheet later indicates that Claimant failed to return. (Tr. at 529-30.) On January 18, 2007, Claimant presented with a history of

depression and anxiety relating back to the death of his mother. Claimant's chief complaints were anxiety with insomnia, mood swings, irritability and loss of interest. James Lowe, PA-C diagnosed major depressive disorder, recurrent, PTSD and rule out bipolar disorder on Axis I and made no Axis II diagnosis. He rated Claimant's GAF at 40-45. Mr. Lowe prescribed Cymbalta and Seroquel. (Tr. at 524.) On February 20, 2007, Claimant reported a history of hypomanic episodes with increased irritability, decreased need for sleep, increased goal directed behavior and pressured speech and mind racing. Claimant reported these episodes usually last for a few hours a day and they are much less in frequency now, but he still has them. In addition, he reported that his mood remains anxious. (Tr. at 521.) Sunita Singh, M.D. diagnosed bipolar affective disorder, type II, most recent episode mixed. (Tr. at 521.)

Lester Sargent, M.A. examined Claimant on April 30, 2007, at the request of the State disability determination service. His report and assessment are summarized below. (Tr. at 549-58.)

On July 9, 2007, Claimant returned to Dr. Singh because he "cannot control his symptoms." (Tr. at 566.) Claimant reported trouble with sleep, increasing depression and mood swings. (Tr. at 566.) Dr. Singh's diagnosis was bipolar affective disorder, type II, most recent episode depressed on Axis I. Dr. Singh deferred an Axis II diagnosis. She rated Claimant's GAF at 60. (Tr. at 567.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in finding that Claimant can perform a limited range of light work; (2) the ALJ failed to give substantial weight to the vocational expert's testimony and improperly inserted his own opinion; and (3) the ALJ erred in his findings about the limitations caused by Claimant's mental impairments, depression and bipolar disorder. (Pl.'s Br. at 2-20.)

The Commissioner argues that (1) substantial evidence supports the ALJ's residual functional capacity determination and finding of nondisability; (2) the ALJ did not err in rejecting the vocational expert's testimony about what an individual with bipolar disorder might experience in a stressful work setting; and (3) the ALJ fully considered the nonexertional limitations resulting from Claimant's mental impairments. (Def.'s Br. at 13-16.)

The court finds that the ALJ's decision is not supported by substantial evidence because the ALJ's findings regarding Claimant's mental limitations are ambiguous and contain inconsistencies that the undersigned cannot reconcile. As such, the undersigned is constrained to conclude that the ALJ's decision is not supported by substantial evidence.

The ALJ must accompany his decision with sufficient

explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

In his decision, the ALJ found that Claimant had the following severe impairments: history of right lumbar radiculopathy; status post L4-5 laminectomy on the right; chronic low back pain and bilateral radicular symptoms; chronic lumbosacral strain; postlaminectomy syndrome; history of right foot injury with first and second toe traumatic amputations with surgical closure; obesity; and biplar II disorder. (Tr. at 18.)

Regarding the evidence of record related to Claimant's mental impairments in particular, the ALJ acknowledged in his decision, the report of Lester Sargent, M.A., who evaluated Claimant on April 30, 2007, at the ALJ's request after the first administrative hearing. Mr. Sargent diagnosed bipolar II disorder, most recent episode mixed on Axis I and made no Axis II diagnosis. (Tr. at

10

553.) He completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) on which he opined that Claimant had moderate limitations in his ability to (1) carry out complex job instructions; (2) make judgments on complex work-related decisions; (3) interact with supervisors; and (4) respond to usual work situations and changes in a routine work setting. (Tr. at 556-57.) When asked to identify the factors that supported his assessment as to the third and fourth factors identified above, Mr. Sargent wrote that "[if] untreated, the claimant will likely have difficulty interacting appropriately with authority figures and he may not always react predictably in stressful social situations." (Tr. at 557.) The ALJ stated in his decision, that he gave "great weight to this opinion as it is well-supported by the evidence of record."[1] (Tr. at 19.)

In his decision, the ALJ made a residual functional finding that spans an entire page. (Tr. at 23.) With respect to Claimant's mental impairments in particular, the ALJ made the following finding:

> Mr. Sargent noted that results from MMPI-2 testing did not provide any useful information, because the claimant answered test items in a manner to present an unfavorable impression of himself. Mr. Sargent diagnosed bipolar II disorder and opined that the claimant's prognosis is fair. According to Mr. Sargent, the claimant is

---

[1] In reciting Mr. Sargent's opinion, the ALJ incorrectly states that Mr. Sargent found mild limitations in Claimant's ability to "interact to changes in a routine work setting." (Tr. at 19.) As noted above, Mr. Sargent found this area to be moderately limited.

> moderately impaired in his ability to carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with supervisor(s), and respond appropriately to usual work situations and to changes in a routine work setting. He is mildly impaired in his ability to interact with the public and interact to changes in a routine work setting. Mr. Sargent noted that, if untreated, the claimant will likely have difficulty interacting appropriately with authority figures and he may not always react predictably in stressful social situations.

(Tr. at 23.)

At the supplemental administrative hearing, the ALJ posed a lengthy hypothetical question to the vocational expert. (Tr. at 645-48.) Regarding Claimant's mental impairments in particular, the ALJ summarized some of the evidence of record related to Claimant's mental impairments, including Mr. Sargent's findings (Tr. at 646-48), and directed the vocational expert to Exhibit 23F, Mr. Sargent's report. The ALJ instructed the vocational expert to

> [t]ake a look at the assessments and look at the definitions that they used and then look at the assessments checked on that form. Take into consideration the modifiers and the words that are written in there. Like, for instance, on the second page, where it says if untreated the claimant will likely have difficulty interacting appropriately with authority figures and may not always react predictably, instructional social withdrawal. Factor all those into the hypothetical. *** Tell me whether in your opinion he would be able to do any of his past work.

(Tr. at 648.)

In response, the vocational expert testified that Claimant could not return to his past work, but that "an individual with these limitations would best work in a situation where they're not

12

in touch with the public on a regular basis. However, I do think such an individual could work in a setting where they do assembly or repetitive work activities." (Tr. at 649.) The vocational expert later identified the jobs of bakery worker and surveillance system monitor. (Tr. at 653-54.)

Later in the supplemental administrative hearing, the ALJ discussed Claimant's mental condition further:

> if I get into the mental things, there's really not much in the way of mental limitations set out in the record. Most of the mental evaluation they just make a bunch of pronouncements and don't tell me anything about what testing they relied on from the claimant's side. From the government's side, a lot of them just take the position that, yeah, there's some kind of effective [sic] disorder but it's not severe and don't bother to tell you much more. I've got some records from the mental standpoint in here but they don't really have any breakdowns of RFC's with the exception that somehow even though there's very little testing done that I see any indication of. By the claimant's or by the claimant's people they have basically diagnosed him with depression and anxiety and have turned around and given him ... a mental assessment that, that it ranged anywhere from 35 on a GAF score to somewhere around 60 but they don't tell me how his functioning is affected from category to category. I would assume that if someone is functioning globally at 45 or 35 they're not going to be working.

(Tr. at 654.)

The vocational expert responded "[t]hat is correct." (Tr. at 655.) The ALJ stated that he would "assume if they're functioning at 35 they'd almost assuredly be locked up somewhere in a mental institution or at least be visiting there on an almost daily basis," and the vocational expert agreed. (Tr. at 654-55.)

At that point in the administrative hearing, the hearing was

13

interrupted because Claimant's counsel was needed in another hearing. As a result, the ALJ did not question the vocational expert further. (Tr. at 655.)

On cross-examination, the following exchange occurred between Claimant's counsel and the vocational expert:

> Q Ms. Posey, with respect to the Exhibit 23F, the, Mr. Sargeant had indicated a moderate limitation in the ability to react or interact with supervisors and you see that there.
>
> A Yes, I do.
>
> Q Would that –
>
> A There's a moderate interact appropriately with supervisors and then to respond appropriately to usual work situations and changes in routine work setting. Well, the comment in this exhibit also comments that there would be difficulty at a greater degree if the individual had the situations that were stressful. And since we cannot predict in a work setting what might constitute stress for individuals with bipolar disorder and I'm speaking now as a vocational counselor, it's my opinion that if the individual were cycling and either at the depressed or the manic phase that would constitute a stressful situation and would therefore increase the likelihood of problems at work. It has also been my experience that individuals who work in unskilled work generally have employers who have less tolerance for people who are not able to meet the demands of a usual workplace. And should an individual behave in an inappropriate manner it's unlikely they would be able to sustain work. They might be able to get a job. As long as they remain emotionally stable they'll do fine. But in unskilled work it's unlikely that employers are as understanding as they can be with people who have skilled work background.

(Tr. at 656-57.) The vocational expert further stated that this was the case in both positions that she had previously identified, more so with the bakery worker situation. (Tr. at 657.)

14

In his decision, the ALJ noted the questioning by Claimant's counsel and explained that he

> rejects the further hypothetical as a moderate limitation in the ability to interact with supervisor(s) has already been factored into the hypothetical. A greater limitation is simply not supported by the objective credible evidence of record. We cannot predict in the work setting what might constitute stress. Accordingly, in the opinion of the undersigned, the limitations propounded to the vocational expert contain all inferences regarding the claimant's impairments and the degree of severity thereof which are raised by the objective and credible evidence of record. In response to questions posed by the undersigned, the vocational expert testified that there are jobs the claimant can perform despite his limitations. The undersigned finds the number given to be significant.

(Tr. at 34.)

It is unclear to the court what mental limitations the ALJ intended to be included in his residual functional capacity finding. The residual functional capacity finding related to Claimant's mental impairments is more a statement of the evidence from Mr. Sargent, than a finding as to what limitations Claimant's bipolar disorder placed on his ability to work based upon a weighing of the evidence of record.[2] In addition, in rejecting the testimony of the vocational expert upon questioning from Claimant's counsel, the ALJ rejected a portion of Mr. Sargent's opinion which he had earlier accepted in his residual functional capacity finding

---

[2] There is additional evidence of record from treating sources related to Claimant's mental impairments, including that from Dr. Whelan and Dr. Singh, and there is little discussion of the evidence from these sources (Tr. at 19, 29-30), much less an explanation regarding the weight afforded the opinions of these sources.

and to which he earlier stated he gave "great weight." (Tr. at 19.)

It is equally unclear whether the vocational expert actually considered all of the limitations opined by Mr. Sargent and whether she believed Claimant could work given the limitations opined by Mr. Sargent. The supplemental administrative hearing was interrupted during the time the ALJ was questioning the vocational expert about Claimant's mental limitations, and the record suggests that the ALJ may not have been finished with his questioning on the subject, but had to move on.

In any event, although the ALJ told the vocational expert to consider the entire report from Mr. Sargent, he did not set out the limitations specifically, and instead, referred explicitly only to Mr. Sargent's comments that he wrote when asked to identify the factors that supported his assessment. While the ALJ's general referral to an assessment such as Mr. Sargent's is not uncommon, it becomes problematic in this case because upon further questioning by Claimant's counsel on cross-examination, the vocational expert testified that jobs may not be available given some of the opinions expressed by Mr. Sargent on the assessment, particularly his comments about stressful situations.

It is notable that Mr. Sargent, who examined Claimant at the request of the Commissioner, opined that Claimant had moderate limitations in the ability to interact with supervisors and respond

appropriately to usual work situations and to changes in a routine work setting. Mr. Sargent's additional statement that if left untreated, Claimant could have difficulty interacting appropriately with authority figures and reacting predictably in social situations, could be viewed not as a qualification of his opinion about Claimant's ability to interact with supervisors and respond appropriately to usual work situations and to changes in a routine work setting, but instead, as a justification for his ratings. Mr. Sargent's comments could even be interpreted to mean that Claimant would have more severe (i.e., marked) limitations in these two areas if his condition was left untreated. It is not the court's task to reweigh the evidence of record, and the above observation should not be viewed as an attempt to do so. Rather, the court's observation is intended merely to point out the issues that are left unresolved in the ALJ's decision.

In short, there are too many unanswered questions, ambiguities and inconsistencies in this instant matter, thus constraining the court to find the ALJ's decision is not supported by substantial evidence and necessitating remand pursuant to sentence four of 42 U.S.C. § 405(g). The ALJ's decision is ambiguous and inconsistent, and the vocational expert never explicitly testified as to whether Claimant's moderate limitations in the two areas noted above eliminated the jobs identified. Furthermore, her testimony, that an individual cycling and either at the depressed or manic phase

constitutes a stressful situation, borders on the expression of a medical opinion and creates issues and questions that remain unanswered in the ALJ's decision.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, this matter is REVERSED and REMANDED for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: March 8, 2010

Mary E. Stanley
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JESSE T. SMITH,

    Plaintiff,

v.                                    CASE NO. 2:09-cv-00247

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

## J U D G M E N T   O R D E R

In accordance with the MEMORANDUM OPINION entered this day, it is hereby **ORDERED** as follows:

(1) The final decision of the Commissioner is **REVERSED**; and

(2) This matter is **REMANDED** to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings consistent with the Memorandum Opinion entered this day; and

(3) This action is **DISMISSED** from the docket of this court.

The Clerk is directed to transmit copies of this Order to all counsel of record.

    **ENTER**: March 8, 2010

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge